IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN PEPE, JASON RAUSCH, MICHAEL RAVOTTA, LESLEY STANKIVIC, ERIK TOMKO, AND JAMES BRENT,<br><br>        Plaintiffs,<br><br>vs.<br><br>ACCREDITED HOME LENDERS d/b/a HOME FUNDS DIRECT,<br><br>        Defendant. | Civil Action No. 2:06-cv-01225-GLL<br><br>Judge Gary L. Lancaster |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiffs respectfully submit this Reply in support of their Motion to Compel. In its Opposition, Defendant decries the motives and efforts of Plaintiffs' counsel in representing its clients. Defendant largely seeks to avoid its discovery obligations by blaming Plaintiffs for their inaccurate timesheets, ignoring the allegations at the heart of this dispute: Plaintiffs' timesheets are inaccurate because of Defendant's own instructions and practices. Neither approach is convincing. Plaintiffs' discovery requests are reasonable, tailored to lead to the discovery of admissible evidence, and Plaintiffs will further limit their requests to alleviate Defendant's burden. For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel.

### ARGUMENT

**I. THE PROCEDURAL HISTORY OF WILLIAMS HAS LITTLE BEARING ON PLAINTIFFS' MOTION.**

Defendant makes much of the fact that this case is the result of its "successful" opposition to conditional class certification in Williams v. Accredited Home Lenders, No. 1:05-

cv-1681 (N.D. Ga.), seemingly confusing a decision denying conditional class certification with a decision on the merits. The obligation of Plaintiffs' counsel to zealously pursue Plaintiffs' claims did not come to end because <u>Williams</u> was denied certification—the <u>Williams</u> court dismissed the claims of the opt-in plaintiffs without prejudice. As that court determined: "An individualized inquiry into why some were not paid overtime is required." (<u>See</u> Def.'s Opp. at 16.) Consequently, Plaintiffs, along with the other individuals who opted into <u>Williams</u>, are now pursuing their claims in the proper districts where they worked.

In a footnote, Defendant discusses similar pending motions to compel in filed other courts. (Def.'s Opp. at 3 n.2.) The plaintiffs in the related cases have similar claims and require the same information to prove them. Defendant has universally refused to produce the information sought by Plaintiffs, hence other plaintiffs have filed motions to compel in those cases, as they must. Defendant hedges its bets by then discounting any "precedent" another court may set by granting one of these motion, all the while continuing to manipulate the Georgia court's order from <u>Williams</u> to suit its every purpose. (<u>See</u> <u>id.</u>; <u>see also</u> Defendant's Opp. to Pl.'s M. for Protective Order, Docket No. 27.)

## II. THE PEOPLE WHO WORKED ALONGSIDE PLAINTIFFS ARE FACT WITNESSES BECAUSE THEY WERE SUBJECT TO THE SAME WORKPLACE POLICIES AND PRACTICES AS PLAINTIFFS.

Defendant's rationale that Plaintiffs' workers are not likely to have relevant knowledge because Plaintiffs do not recall their names, addresses, and telephone numbers is simplistic. Plaintiffs' coworkers worked under the same managers, they were subject to the same policies, and they likely worked similar hours. These qualities are what make them fact witnesses, not whether or not Plaintiffs can recall the names and contact information for every individual they worked with from years ago.

Defendant's statement that Plaintiffs failed to name a single coworker in their initial disclosures is incorrect.  Rather, Plaintiffs stated that all Plaintiffs and other persons employed by Defendant in the past three years as loan officers may have relevant information.  Moreover, Plaintiffs subsequently answered, to the best of their recollection, Defendant's discovery seeking the identity of any individuals who knew or should have known that Plaintiffs worked more than forty (40) hours per week.  Whether Plaintiff Erik Tomko worked with two individuals of the identified in his answer is not worthy of the attention it receives from Defendant.  Plaintiffs' identification of these individuals, among others, precedes the following sentence: "Plaintiff's contention is based on the fact that these individuals were generally in the office at the same times he was and those who were loan officers were likely subject to the same overtime practices as Plaintiff."  This sentence is the entire basis of Defendant's concern, despite the fact that Mr. Tomko confirmed in his testimony that he believed this individuals were subject to the same overtime practices as Mr. Tomko.[1]

---

[1] Mr. Tomko stated in relevant part:

> Q.  Why do you believe Alex Carerra knew or should have known that you worked in excess of 40 hours per week at Accredited?
> A.  Because he worked there as well.
> Q.  In relation to you, what time did he arrive at work, before or after?
> A.  Do you know what?  I didn't actually work with him at the time he was employed there; but he's most definitely familiar with the type of, for lack of a better word, coercion that, you know -- I mean, you're expected -- plain and simple, you're expected to put in the time to achieve your numbers, your goals; and I worked with him at New Century and we often chatted about the things that, you know, were implied for us as far as hours.  So basically my stance was, oh, so it hasn't changed.

(Ex. A, Tomko Dep. at 9.)

> Q.  Did you know that during the time of Mr. Carerra's employment with the company that loan officers were paid overtime?
> A.  No.  Things changed after I left.
> Q.  Did you know that Accredited --

At most, Plaintiffs' reply could have been drafted more clearly. It provides no support for denying Plaintiffs' Motion to Compel.

Defendant's allegation that Plaintiffs' requests is simply a "fishing expedition" conducted by Plaintiffs' counsel for more clients is itself a red herring. The obvious counter to Defendant's argument is that Defendant hopes to prevent other loan officers from realizing they may have their own claims. Both arguments depart from the true issue: whether these individuals have discoverable information. It is telling that several of the individuals named in Plaintiffs' interrogatories have not brought claims against Defendant. In fact, several have signed their own declarations in Defendant's favor. (Def.'s Opp. at 6.) Clearly, Plaintiffs' coworkers have discoverable information, no matter which party that may benefit either side.

Finally, Defendant again redirects the Court's attention to Plaintiffs' counsel, stating that it is "attempting to circumvent the impact of the district court's order in <u>Williams</u> denying the firm's motion for conditional certification of a nationwide class." (Def.'s Opp. at 9.) Defendant points to plaintiffs' counsel's direct mail efforts, their publicly available website, and even the offhand remarks of counsel during the parties' 26(f) conference for support. (<u>Id.</u> at 8-9.) This argument deserves closer attention. Rule 7.2 of the Pennsylvania Rules of Professional Conduct unambiguously states that "a lawyer may advertise services through written, recorded or electronic communications, including public media." Comment 1 to Rule 7.2 states further that lawyers may make their services known "not only through reputation but also through organized information campaigns in the form of advertising." Plaintiffs' counsel's website and letters targeted to Accredited loan officers are not only well within Rule 7.2, they are anticipated by the

---

    A. They were paying overtime at that time? No, I did not.

(<u>Id</u>. at 13.)

4

Rule.  Furthermore, "targeted, direct mail advertisements" are expressly excluded from the ban on direct contact with prospective clients imposed in Rule 7.3.  Plaintiffs' counsel has circumvented no court order by hosting its website and sending direct mail in compliance with the Rules of Professional Conduct.  Defendant's hypothesis is no more an effort in distraction, as such merits little of the Court's attention.

As anticipated by Defendant (Def.'s Opp. at 3, n.2), another court has determined that the plaintiffs' coworkers are in fact eyewitnesses to the issues in dispute and granted the plaintiffs' motion seeking the last-known names, addresses, and telephone numbers of their coworkers.  Allen, et al. v. Accredited Home Lenders, No. 3-06-0921, Docket No. 49 (M.D. Tenn., April 23, 2007) (Ex. B).  The Court held that the interrogatories were not overbroad, the privacy interests of former coworkers did not preclude discovery of their contact information, and Defendant's suspicions about solicitation by Plaintiffs' counsel were insufficient to preclude the plaintiffs from this relevant discovery.  Id. at *3-4.  The same reasons apply in the case at bar, and this Court should grant Plaintiffs' Motion to Compel.

### III. PLAINTIFFS' EMAILS AND RECORDS SHOWING THE TIME AND DATES OF PLAINTIFFS' WORK-RELATED ACTIVITY ARE RELEVANT, REASONABLE, AND SHOULD BE PRODUCED.

Defendant argues that it should be spared the burden of producing highly relevant information in its possession simply because "Plaintiffs now assert that they did not accurately report their time." (Def.'s Opp. at 11.)  More precisely, Plaintiffs' claims are that they did not accurately report their time *at Defendant's instruction*.  Defendant's circular argument is not convincing, and the information sought provides an objective means of determining who in this dispute is telling the truth.

5

Defendant's position is certainly desireable:: it will produce some the electronic records it chooses if it can, and if it cannot, it will not produce any relevant paper records (such as written notes of Plaintiffs' contacts with borrowers).  Even so, Plaintiffs will limit their requests to their emails and records of their telephone activity, assuming Defendant will produce this information.

**A.     Defendant Should Produce the Emails of Plaintiffs and Their Managers.**

Emails are in fact relevant because they are date and time stamped, as Defendant acknowledges.  (Def.'s Opp. at 13.)  However, Defendant ignores the fact that the content of emails are also extremely important.  Emails between and among Plaintiffs, branch managers, and other supervisors regarding overtime are directly relevant to the hours worked by Plaintiffs, Defendant's policies and practices regarding overtime in the Pittsburgh office, and Defendant's knowledge.

Defendant also overlooks Plaintiffs' offer to share the cost of producing relevant email, instead concentrating on creating a dire assessment of the cost and burden of producing this information.  This is exactly the outcome Plaintiff seeks to avoid by paying a third party to perform the necessary work.  Defendant estimated that retrieving the media on which the data is stored requires two hours of work.  (Def's Ex. 20, Towler Dec. ¶ 8.)  Plaintiffs' offer starts at that point, when Defendant or a third party could copy the media onto back-up tapes provided by Plaintiffs.  Plaintiffs will pay a third party to perform the remaining work detailed by Mr. Towler, and are confident that it can be done with significant cost and time savings. Additionally, Plaintiffs will provide all information recovered to Defendant, and will agree to nonwaiver and confidentiality provisions in an effort to eliminate the need for a burdensome privilege review.  There is no good reason for Defendant to withhold relevant emails. s

6

B.     **Defendant Should Produce ACD Reports As Well As Trace Reports.**

Defendant monitors a variety of important, relevant information pertaining to Plaintiffs' telephone activity. Defendant's Rule 30(b)(6) corporate designee testified that the company's Automated Call Distribution system tracks "the number of calls, the duration of each call, and total time spent on the phones" for each loan officer. (Ex. E, Glussman Dep. at 78; see also Ex. C, Weber Dep. at 34-39.) Defendant's branch manager and former regional manager, William Weber, confirmed that he relies on these very same call reports to do his job:

> Q. Okay. Did you regularly review any other types of reports while you were a regional manager?
>
> A. Call reports.
>
> Q. Can you describe those?
>
> A. It looks like Exhibit 1. [Indicating a sample call report like that attached to the Supplemental Affidavit of Charles G. Frohman, Doc. 26, Ex. 1.]

(Weber Dep. at 34.)

Mr. Weber testified further that he uses call reports as a branch manager. (Id.) Incredibly, Defendant now claims to be unfamiliar with its own reports: "Plaintiffs demand *something called an ACD Report*, that *purports to show* the total time logged into the telephone." (Def.'s Opp. at 12 (internal quotation omitted).) Plaintiffs' counsel produced eighty-eight (88) pages of ACD system reports to Defendant in the Williams case, from which the sample attached to the affidavit of Charles G. Frohman was drawn (Doc. 26, Ex. 1). These documents span November 2004 to June 2005, were generated by two managers, and were, based on the manager notes on each report, provided to each Pittsburgh loan officer.

Mr. Weber testified that the "total shift time" in these reports was not reliable because of "data integrity issues."[2] (Id. at 35-37.) He did not know how that information was tracked, or whether it depended on logging in and out of the telephone system. (Id..) The possibility of infrequent errors in reporting does not justify withholding the information. On this uncertain basis, and without addressing any potential burden involved, Defendant refuses to produce ACD reports.

Instead, Defendant seeks to limit its production to "Agent Group Outbound Trace Reports" that it is attempting to secure. (Def.'s Opp at 11.) These reports are indeed helpful, as they include the date and time of Plaintiffs' telephone calls. Notably absent from the report, however, is Plaintiffs' shift time. Defendant should produce both types of reports for Plaintiffs.

Records of Plaintiffs' telephone activity and their emails are both relevant and discoverable for different reasons, and with respect to emails, Defendant has offered to assume much of the cost of Defendant's production. For these reasons, Defendant should be compelled to produce this information.

### C. Plaintiffs Will Further Limit Their Requests for Information Pertaining to Other Loan Officers.

In their requests for production of documents, Plaintiffs also seek information pertaining to other loan officers, including personnel files (Request 1), timesheets (Request 4), and payroll records (Request 3). Plaintiffs will limit these requests to that information pertaining to Plaintiffs. However, Plaintiffs maintain their request for reports of overtime compensation (Request 6).

---

[2] Mike Ravotta testified as that "Your total amount of time on the phone that day would be inaccurate from time to time." (Ex. D, Ravotta Dep. at 65.)

Defendant has now produced a report stating the amount of overtime paid to loan officers in each branch office on a monthly basis, from January 2004 to December 2006. Without more detail, this summary offers little information. It does not show, for example, how many employees worked the overtime, and how many were loan officers. Because it is reported on a monthly basis, it is impossible to determine whether overtime hours reported increased toward the end of the month, when loan officers had to close loans to meet their quotas. Defendant should be compelled to produce the relevant data underlying this report for the period of Plaintiff's employment, including overtime paid on a weekly basis in the Pittsburgh office, the number of loan officers employed and the number reporting overtime, and whether the overtime reporting includes employees other than loan officers. Plaintiff will limit his request to this data; the names of other loan officers need not be provided.

## CONCLUSION

The information Plaintiffs seek in their discovery requests is relevant and reasonably calculated to lead to the discovery of admissible information, and Defendant's objections are without merit. Plaintiffs have limited the scope of their Motion to Compel significantly and offered to alleviate the cost and burden of Defendant's response. For these reasons, and those enumerated in more detail above, Plaintiffs' respectfully request that this Court grant Plaintiffs' Motion to Compel.

Respectfully submitted this 30th day of April, 2007,

/s/ Charles G. Frohman
NICHOLS KASTER & ANDERSON, PLLP
Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Charles G. Frohman, MN Bar No. 0386695
Sarah M. Fleegel, MN Bar No. 34557X

4600 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: frohman@nka.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following Counsel for Defendant:

>Robert W. Pritchard (rpritchard@littler.com)
>Denise R. Abbott (dabbott@littler.com)
>LITTLER MENDELSON, P.C.
>Dominion Tower
>625 Liberty Avenue, 26th Floor
>Pittsburgh, PA 15222

>/s/ Charles G. Frohman
>Charles G. Frohman
>Minnesota Bar No. 0386695
>Attorney for Plaintiffs